**FREE MOTION FITNESS, INC., Plaintiff,**

v.

**CYBEX INTERNATIONAL, INC.; Nautilus' Group Inc. and Nautilus Human Performance Systems, Inc., Defendants.**

Nos. CIV.1:01–CV–152–J, CIV.1:02–CV–122.

United States District Court, D. Utah, Northern Division.

Dec. 30, 2003.

Larry R. Laycock, David R. Wright, Charles J. Veverka, Brett I. Johnson, Workman Nydegger & Seeley, Salt Lake City, UT, Bradley H. Bearnson, Bearnson & Peck, Logan, UT, Thomas R. Vuksinick, R. Parrish Freeman, Workman Nydegger & Seeley, Salt Lake City, for Plaintiff.

Casey K. McGarvey, E. Scott Savage, Berman Tomsic & Savage, Salt Lake City, UT, C. Vincent LoCurto, Connis O. Brown, III, Seth P. Robert, Brown Locurto & Robert LLP, John Christopher, Alan M. Weisberg, Jeffrey H. Kamenetsky, Christopher & Weisberg PA, Ft. Lauderdale, FL, Thomas R. Karrenberg, Shayne R. Kohler, Anderson & Karrenberg, Salt Lake City, UT, David Lieberworth, Garvey Schubert & Barer, Seattle, WA, William B. Prince, Dorsey & Whitney, Salt Lake City, UT, Paul T. Meiklejohn, Brian Chung Park, Mark S. Carlson, David M. Jacobson, Dorsey & Whitney LLP, Keith S. Dubanevich, Garvey Schubert Barer, Portland, OR, John W. Sobba, Vancouver, WA, for Defendants.

## MEMORANDUM OPINION & ORDER RE: FREE MOTION AND CYBEX'S CROSS–MOTIONS FOR SUMMARY JUDGMENT AS TO INFRINGEMENT OF CLAIM ONE OF PATENT '061; AND FREE MOTION AND NAUTILUS' CROSS MOTIONS FOR SUMMARY JUDGMENT AS TO INFRINGEMENT OF CLAIM ONE OF PATENT '061.

JENKINS, Senior District Judge.

### PROCEDURAL HISTORY

On December 3, 2001, Free Motion Fitness Inc. ("Free Motion") filed its Complaint against Cybex International, Inc. ("Cybex") under the patent laws of the United States, specifically, under Title 35 U.S.C. §§ 271, 281, 283, 284 and 285 (2000). (Complaint, dated December 3, 2001 (dkt. no. 1).)

On May 9, 2003, Free Motion filed its Motion and Memorandum in Support of Partial Summary Judgment of Literal Infringement of Claim 1 of U.S. Patent 6,458,061 ("'061 Patent") By Defendant's (Cybex) FT 360 Device ("Pl. Brief I") (dkt. nos. 109, 110). The '061 Patent describes and claims a cable crossover exercise apparatus. Cybex opposed plaintiff's motion by filing its Cross Motion and Memorandum in Support of Partial Summary Judgment of No Infringement of Claim 1 of the '061 Patent, on June 20, 2003 ("Cybex Brief") (dkt. nos. 118, 119). Free Motion filed its opposition and reply to defendant's motion on July 2, 2003 ("Pl. Reply I") (dkt. no. 121). Cybex filed its reply to Free Motion's opposition on July 8, 2003 ("Cybex Reply") (dkt. no. 122). Both cross-motions for summary judgment were heard on July 11, 2003. Larry Laycock and Parrish Freeman of the law firm Workman Nydegger & Seeley appeared representing Plaintiff Free Motion. Casey McGarvey and Scott Savage of the law

firm Berman, Gaufin, Tomsic & Savage appeared representing Defendant Cybex. The Court continued the matter until July 22, 2003, when the Court traveled to the offices of Workman Nydegger & Seeley and the Metro Sport Club Spa to observe both the Free Motion device and the Cybex machines, respectively. Following these on-site visits, the Court took the matter under advisement. (Minute Entry, dated July 22, 2003 (dkt. no. 124).)

In a separate but similar action, on September 26, 2002, Free Motion filed its Complaint against the Nautilus Group, Inc. ("Nautilus"). (Complaint, dated September 26, 2002 (dkt. no. 1, 1:02–cv–122).) On August 1, 2003, Free Motion filed its Motion for Partial Summary Judgment of Literal Infringement of Claim One of the '061 Patent by Defendant's (Nautilus) Freedom Trainer Device ("Pl. Brief II") (dkt. nos. 20, 21). Before, Nautilus could respond to this motion, the Court (Judge Paul G. Cassell) signed an order on August 29, 2003, which consolidated the Nautilus matter with the Cybex matter under the Civil No. 1:01cv152. (Order, dated August 29, 2003 (dkt. no. 22, 1:02–cv–122).) Nautilus filed its response and Cross Motion for Summary Judgment of Noninfringement Literally of Claim One of the '061 Patent on September 30, 2003 ("Nautilus Brief") (dkt. no. 158, 159). Free Motion filed its reply in support of its motion on October 15, 2003 ("Pl. Reply II") (dkt. no. 168). Free Motion filed its opposition to Nautilus' motion on November 3, 2003 ("Pl. Opposition II") (dkt. no. 179). Nautilus filed its reply to Free Motion's opposition on November 18, 2003 ("Nautilus Reply") (dkt. no. 183).

The Nautilus cross-motions for summary judgment were heard on November 19, 2003, after which the Court took the matter under advisement. (Minute Entry, dated November 19, 2003 (dkt. no. 185).) Tom Vuksinick and Parrish Freeman appeared representing Plaintiff Free Motion. Paul Meiklejohn, David Jacobson, and William Prince appeared representing Defendant Nautilus. Casey McGarvey appeared representing Cybex.

## LEGAL STANDARD

The purpose of summary judgment is to assess whether trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir.1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991)). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that there are genuine issues for trial. *Vitkus*, at 1539 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991)). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To constitute a genuine factual dispute, there must be more than a scintilla of evidence that is significantly probative in establishing the fact. *Vitkus*, 11 F.3d at 1539.

In applying the summary judgment standard, the court construes the factual record and reasonable inferences in the light most favorable to the party opposing summary judgment. *Blue Circle Cement, Inc. v. Bd. of County Comm'rs.*, 27 F.3d 1499, 1503 (10th Cir.1994); *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Regarding cross-motions for summary judgment,

"[t]he court must rule on each party's motion on an individual and separate basis, determining for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright, et al., *Federal Practice and Procedure*, § 2720, at 327–328, 335–337 (3d ed.1998).

"Summary judgment is appropriate in cases alleging patent infringement." *CIVIX–DDI, LLC v. Microsoft Corp.*, 84 F.Supp.2d 1132, 1138 (D.Colo.2000). The plaintiff bears "the burden of proving infringement by a preponderance of the evidence." *Pehr v. Rubbermaid Inc.*, 87 F.Supp.2d 1222, 1226 (D.Kan.2000) (citing *Kegel Co., Inc. v. AMF Bowling Inc.*, 127 F.3d 1420, 1425 (Fed.Cir.1997)).

■ Courts consistently apply a two-step inquiry when determining whether an accused device infringes another's patent. *Pehr*, at 1226 (citing *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 803 (Fed.Cir.1999)); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). First, as a question of law, the court must construe the patent to determine the scope and meaning of its claims. *Id.* Second, as a question of fact, the claims as construed must be compared to the allegedly infringing product or method to determine whether the patent's claims are infringed. *Id.*

■ The Court must determine the proper construction of the terms of this claim using the language of how it is actually defined and described in the patents. The claim construction inquiry begins and ends with the actual words of the claim. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed.Cir.1998). Absent definitions of some of the disputed terms in the claim, the Court construes the terms using their ordinary and accustomed meaning. *Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed.Cir.1999). The '061 Patent is presumed valid.[1]

## ANALYSIS

### A. The '061 Patent

■ The first step of analysis is to determine the scope and meaning of Claim One of the '061 patent. In construing a patent claim, the court looks first to intrinsic evidence of record, i.e. the patent itself, including all claims as the most significant source of the legally operative meaning of disputed claim language. Thus, the Court looks first to the language of Claim One. The relevant disputed terms are highlighted:

1. An exercise apparatus, comprising:
 a resistance assembly;
 **a cable linking** a first extension arm and a second extension arm to the **resistance assembly**, wherein the cable includes a first strand and a second strand;
 the first **extension arm** includes a first **end** pivotally supported **adjacent** the resistance assembly at a **first pivot point** rotating about a first axis and a free second end from which the first end of the first extension arm further including a pulley having an axis of rotation offset from the first pivot point and rotating about an axis of rotation offset from the first pivot point and rotating about an axis substantially parallel to the first axis;

---

1. The parties to this case have also filed motions for summary judgment as to the validity of the '061 Patent. For the purposes of the present motion on infringement, the Court will assume the validity of the '061 Patent. U.S. Patents are presumed valid. *United States v. Telectronics, Inc.*, 857 F.2d 778, 785 (Fed.Cir.1988).

the second extension arm includes a first end pivotally supported adjacent the resistance assembly at a second pivot point rotating about a second axis and a free second end from which the second strand of the cable extends for engagement by a user, the first end of the second extension arm further including a pulley having an axis of rotation offset from the second pivot point and rotating about an axis substantially parallel to the second axis.

('061 Patent, Claim 1, col. 7, lines 1–16 (Exhibit A to Pl. Brief) (emphasis added).) "[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." *Vivid Tech., Inc. v. American Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed.Cir.1999). The Court's construction of the relevant disputed terms of Claim One are dispositive:

### 1. a cable linking

■ Free Motion asserts that "a cable linking" is not limited to a single cable since use of the "preamble term 'comprising' is open-ended, meaning the recited elements must be present but additional features may be present as well." (Pl. Reply I at 15.) Cybex opposes, arguing that the literal scope limits the claim to a single cable where the FT 360 links the arms and resistance assembly using two cables. (Cybex Brief at 7.) The Court observes that on October 1, 2002, a certificate of correction was filed with the United States Patent and Trademark Office ("USPTO") regarding the '061 patent. The Correction substituted certain words for other words in the patent. Among the twelve corrections made: "apparatuses" was changed to "apparatus;" and "arm" was changed to "arms." These two corrections changed the pluralized term to the singular term and vice versa respectively. It can be inferred, therefore, that if the patent intended more than one cable, it would have expressly indicated that by using a plural term.

Free Motion further argues that the term "linking" does not preclude an embodiment from having an intervening structure of some kind, namely a second cable. Free Motion defines linking as "serving to connect one part or thing with another." (Pl. Brief I at 8–9 (citing *Random House Webster's Unabridged Dictionary*, 119 (2nd ed.2001)).) Cybex denies that the FT 360 fits the definition because while one cable does in fact link both arms, direct contact with the weight stack is accomplished only by way of a second cable. (Cybex Brief at 7–8.) The Court agrees with Cybex that the '061 patent does not contemplate multiple cables as permissible intervening structures that link the arms and resistance assembly. In addition to the expressly singular meaning of the term "a cable linking," throughout the patent, the inventor refers to "the cable." ('061 Patent, col. 2, lines 18–21; col. 3, lines 10–30, 39–55; col. 5, lines 47–67; col. 6, lines 1–14.) The Court must conclude, therefore, that the patent contemplates a single cable that links the arms and resistance assembly.

### 2. resistance assembly

■ Free Motion broadly defines the "resistance assembly" as "a set of parts put together to make a completed product that tends to oppose or retard motion." (Pl. Reply I at 14.) Cybex, on the other hand, narrowly defines the resistance assembly as just the weight stack and nothing else, that when assembled is capable of providing selected degrees of beneficial resistance. (Cybex Brief at xiii.) Nautilus argues that the "resistance assembly" is properly defined in specification as "a support frame 34 with vertical support members 36 aligned to support the stack of

weight plates 32." (Nautilus Reply at 6 (quoting '061 Patent, col. 3, lines 31–33; and citing *Bell Atlantic Network Services, Inc., v. Covad Communications Group, Inc.,* 262 F.3d 1258, 1269–70 (Fed.Cir.2001) (specification properly consulted when ordinary meaning is too broad to determine scope of claim)).)[2]

■ The Court looks first to Claim Six of the '061 patent which defines the resistance assembly referred to in Claim One:

6. The exercise apparatus of claim 1, wherein the resistance assembly comprises:

a support frame;

a stack of weight plates;

one or more upright supports that align the weight plates for vertical movement;

a system of cables and pulleys, wherein engagement of the first end and/or second end of the cable, which links the first and second extension arms to the weight stack, by a user results in vertical movement of the weight plates.

('061 Patent, col. 8, lines 38–49.) Free Motion argues that under the doctrine of claim differentiation, each claim in a patent is presumptively different in scope and because Claim 6 is a dependent claim, that Claim 6 is narrower than Claim 1. (Pl. Reply II, at 4 (citing *RF Delaware, Inc. v. Pacific Keystone Tech., Inc.,* 326 F.3d 1255, 1263 (Fed.Cir.2003); and *Slater Elec., Inc. v. Thyssen–Bornemisza, Inc.* 650 F.Supp. 444, 456 (S.D.N.Y.1986)).) The Court agrees that it is settled rule of law that narrower, dependent claims cannot be read into broader, independent claims so as to limit the scope of the latter.

*See DMI Inc. v. Deere & Co.* 755 F.2d 1570, 1574 (Fed.Cir.1985).

Therefore, to avoid using dependent claims to define independent Claim One, the court properly consults the specification in the brief description of the preferred embodiment of the '061 Patent to define the resistance assembly as the assembly of parts that make up the weight stack:

[A] support frame 34 with vertical support members 36 aligned to support the stack of weight plates 32.

('061 Patent, col. 3, lines 25–31.[3])

The Court further notes that during argument, Free Motion appeared to agree with consulting the specification: "[T]hey (Nautilus) say the resistance assembly is properly construed as the weight stack meaning weight stack 124 or weight stack 12 defined in the specification as support frame 34 with vertical support members 36 aligned to support the weight stack plates, so it looks like we've basically come into agreement with respect to resistance assembly interpretation." (Transcript of Hearing, dated November 19, 2003, at 9, lines 1–6.)

### 3. extension arm

■ Free Motion argues that the "extension arm" is "a part similar to a human arm, such as a long part projecting from a central support, and specifically includes structure that comprises the arm's locking means." (Pl. Brief I at 11.) Cybex posits that the extension arm cannot be read to include the casting of the FT 360 because they do not extend away from the exercise apparatus for use by the exerciser. (Cybex Reply at 7.) Nautilus submits that the extension arm includes all of the parts that

2. Nautilus argues that "resistance assembly" cannot be properly construed in light of subsequent dependent claims 6 and 7, but that if claims 6 and 7 are ignored, then alternatively, the specification definition is how the term

should be defined. *See* (Transcript of Hearing, dated November 19, 2003, at 32, lines 17–24.)

3. Referring to Figure 2 of the '061 Patent.

extend from the frame including the swivel assembly (or casting). (Nautilus Brief at 16.)

The '061 patent states that "the cable crossover apparatus 110 includes a pair of extension arms 112, 114 positioned to facilitate a wide range of lifting type exercises." ('061 Patent, col. 7, lines 30–32.) Claim 8 states that each extension arm includes a locking means for selectively locking the extension arm in various positions. ('061 Patent, col. 8, lines 54–60.) Thus, Claim 8 and its specification suggest that the casting that houses the locking means is also part of the arm.[4]

The Court construes the "extension arm" to include both the extension device and the casting which locks the extension arm in various positions.

### 4. end

■ Free Motion proposes that the meaning of the word end is the end region, not limited to the terminus. (Pl. Opposition II. at 15–16.) Nautilus proposes that the end is the "portion of an object having length that includes the terminus and does not extend beyond the terminus of the object." (Nautilus Brief at 11.) The Court is persuaded that the ordinary and accustomed use of the term end is the portion having length, not limited to the terminus.

### 5. adjacent

■ Free Motion proposes that adjacent ought to be construed as lying near or close. (Pl. Opposition II. at 16–17.) Nautilus similarly proposes that adjacent means near to, abutting, adjoining, bordering, or contiguous or coterminous with, but emphasizes "in contact with." (Nautilus Brief at 14, 22.) The Court is persuaded that objects may or may not be in contact, but are not adjacent to each other where there is another object between them. *See May v. Carriage, Inc.*, 688 F.Supp. 408, 414, n. 2 (N.D.Ind.1988) ("adjacent things may or may not be in contact with each other, but they are not separated by things of the kind") (quoting *Webster's New World Dictionary* (2d ed.1976)).

### 6. first pivot point

■ The appropriate legal meaning of the term "first pivot point" is chronological. Cybex and Nautilus correctly argue that the first pivot point is construed as an expression of location, specifically the first pivot point is chronologically the first point that pivots on the *end* of the extension arm where the arm is supported by the frame. (*See* Cybex Brief at 5; Nautilus Brief at 17.) Free Motion asserts that the first pivot point is not the first chronological point, rather the first point that pivots in the same functional capacity as the one described in the '061 patent-where the pivot rotates on a parallel axis (*See* Pl. Brief I at 14, 19–20.) However, the Court finds that the ordinary and accustomed reading of this term simply describes the first chronological point[5] about which the arm turns.

---

**4.** The specification describes the locking means: the first extension arm 112 includes a locking hole 170 located adjacent a pivot hole 172 through which a pivot point pin 174 passes to pivotally couple the first extension arm 112 to the semicircular flange assembly 178, and ultimately, the weight stack 124. The locking hole 170 is aligned with a series of flange holes 176 formed in the semicircular flange assembly 178 of the weight stack 124. In practice, and as those skilled in the art will readily appreciate, a locking pin 180 is passed through an aligned locking hole 170 and flange hole 176 to lock the first extension arm 112 at a desired angular orientation relative to the weight stack 124. ('061 Patent, col. 6, line 65—col. 7, line 9.)

**5.** Described in specification as "pivot hole 72 through which a pivot pin 74 passes," about which the arm turns. ('061 Patent, col. 4, lines 22–25.)

## B. Literal Infringement

■ Having determined the scope and meaning of these terms, the Court now compares the terms of Claim One to each of the accused devices. To promulgate literal infringement, "the accused device [must] contain each limitation of the claim exactly; any deviation from the claim precludes a finding of literal infringement." *Pehr* at 1231 (citing *Litton Systems, Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1454 (Fed. Cir.1998)).

### 1. The Cybex FT 360 Device

■ Free Motion argues that the FT 360 contains every element required by the properly construed language of Claim One. Cybex distinguishes its machine from the '061 patent, arguing that no matter how the Court construes the terms in the claim, the FT 360 lacks required elements of the claim.

It is undisputed that the FT 360 has multiple cables rather than a single cable which links that arms to the resistance assembly. Furthermore, the Cybex FT 360 has two castings attached to the frame of the exercise apparatus. Each casting contains a pulley that rotates in a plane completely opposite to the plane of rotation of the casting. Consequently, the FT 360 extension arms are connected to a pulley which has an axis of rotation that is "perpendicular" rather than "substantially parallel" to the first axis of rotation, as required by Claim One of the '061 patent.

As such, the FT 360 lacks required elements of the claim, precluding literal infringement of Claim One by Cybex's FT 360 device. Consequently, Free Motion's Motion for Partial Summary Judgment for Literal Infringement of Claim One must be denied; and Cybex's Partial Motion for Summary Judgment for Noninfringement as to Claim One is granted as to the issue of literal infringement.

### 2. The Nautilus Freedom Trainer Device

■ Free Motion argues that the Freedom Trainer device contains every element required by the properly construed language of Claim One. Nautilus distinguishes its machine from the '061 patent, arguing that the Freedom Trainer lacks required elements of the claim.

Structurally, the Nautilus Freedom Trainer has a first pivot point at the end of the swivel assembly where it attaches to the frame of the apparatus. Similar to the Cybex FT 360, the Freedom Trainer has a perpendicular axis that supports the extension arm as construed by the Court. Since Claim One requires the axis to be parallel to support the arm, this precludes the Freedom Trainer from literally infringing Claim One. In addition, Nautilus argues that the intrinsic evidence specifically disclaims a pivot axis perpendicular (transverse) to the pulley axis. The file history indicates that Free Motion claimed distinction over the Fitzgerald patent on this very issue. When asked about this disclaimer, Free Motion replied,

> "[I]f they [Nautilus] only had *one* pivot point and it were perpendicular [like that of the Fitzgerald device] that would create a problem for us, but as long as they have a pivot point on the end that is parallel to the axis of rotation of the pulley, adding that perpendicular pivot isn't relevant to the infringement determination."

(Transcript of Hearing, dated November 19, 2003. p. 57, lines 12–16.) Free Motion's argument begs the question of the validity of the patent which is assumed for the purposes of this motion, but will be reviewed with regard to the cross motions for summary judgment as to validity pending in this case.

At a minimum, however, the Freedom Trainer device lacks required elements of

the claim, precluding literal infringement of Claim One by Nautilus' Freedom Trainer device. Consequently, Free Motion's Motion for Partial Summary Judgment for Literal Infringement of Claim One must be denied; and Nautilus' Partial Motion for Summary Judgment for Noninfringement Literally as to Claim One is granted.

### C. Doctrine of Equivalents

Whereas Free Motion's motion for partial summary judgment asserted literal infringement, Cybex indicates that its cross-motion for partial summary judgment asserts noninfringement not only under the theory of literal infringement, but also under the theory of the doctrine of equivalents. (Cybex Reply at 10.) Cybex concedes that Free Motion has not fully briefed their position on infringement under the doctrine of equivalents and suggests that it would be fair to allow Free Motion to supplement its brief as to this issue. (*Id.*) Nautilus motion only asserted *literal* noninfringement and not noninfringement under the theory of the doctrine of equivalents. (*See generally,* Nautilus Brief.)

 Under the doctrine of equivalents, a product that does not literally infringe the express terms of a patent claim may nonetheless be found to infringe if there is "equivalence between the elements of the accused product or process and the claimed elements of the patented invention." *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 149 F.3d 1309, 1315 (Fed.Cir.1998). In other words, if the accused device performs identically the same function in substantially the same way to achieve substantially the same result as an element or limitation of the claimed device, then that part of the accused device is considered equivalent. *Laser Tech. Inc. v. Nikon, Inc.* 215 F.Supp.2d 1135, 1166 (D.Col.2002) (citing

*Warner–Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 39, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)). Even without Free Motion's supplemental brief on the doctrine of equivalents, when viewing the facts in a light most favorable to Free Motion, at a minimum, there exist genuine issues of material fact as to the function and results achieved by both the Cybex FT 360 and the Nautilus Freedom Trainer devices as pertaining to the elements of the claim, thus precluding a finding of noninfringement as a matter of law under the doctrine of equivalents at this time.

Plaintiff's Motion for Summary Judgment for Literal Infringement of Claim One of the '061 Patent by Cybex's FT 360 Device is DENIED. Cybex's Motion for Partial Summary Judgment for No Infringement of Claim One of the '061 Patent by Cybex's FT 360 Device is GRANTED in part as to literal infringement and DENIED in part as to infringement under the doctrine of equivalents.

Plaintiff's Motion for Summary Judgment for Literal Infringement of Claim One of the '061 Patent by Nautilus' Freedom Trainer Device is DENIED. Nautilus's Motion for Partial Summary Judgment for Noninfringement Literally of Claim One of the '061 Patent by Nautilus' Freedom Trainer Device is GRANTED.